No. 87-259

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

MOATS TRUCKING COMPANY, INC.,
a Montana Corporation, LLOYD
MOATS and LUCILE MOATS,

Plaintiffs and Appellants,

-vs-

GALLATIN DAIRIES, INC.,
a Montana Corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lyman H. Bennett, III; Morrow, Sedivy and Bennett, P.C.
Bozeman, Montana

For Respondent:

Berg, Coil, Stokes and Tollefsen, Bozeman, Montana
Michael Cok; Cok and Wheat, Bozeman, Montana

Submitted on Briefs: March 18, 1988

Decided: May 3, 1988

Filed: MAY 3 - 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


Plaintiff Moats Trucking Company appeals from a jury verdict from the District Court, Eighteenth Judicial District, Gallatin County. The plaintiff brought this action against the defendent alleging breach of contract as well as breach of the covenant of good faith and fair dealing arising out of a termination of an oral agreement. The jury returned its verdict in favor of the defendant and awarded no damages. From this judgment, plaintiff appeals. We affirm.

Moats Trucking Company presents the following issues for our review:

1. Did the District Court err in refusing to admit evidence pertaining to the issue of mental and emotional distress suffered by Lloyd and Lucille Moats?

2. Did the District Court err in ruling that Keith Nye's testimony was not hearsay?

3. Did the District Court err in denying plaintiffs a new trial as the verdict reached by the jury was contrary to the law?

In 1956, the plaintiff Lloyd Moats began hauling milk for the defendant Gallatin Dairies, Inc. (Gallatin). Moats' relationship with the dairy was that of an independent contractor. As time passed, Gallatin's operation increased in size. Moats Trucking Company also expanded in order to meet Gallatin's hauling needs. No written agreement was ever entered into between Moats and Gallatin.

In 1970, Lloyd Moats and his wife, Lucille, incorporated their trucking business and formed Moats Trucking Company (MTC). Lloyd and Lucille Moats were the directors and sole

stockholders of MTC. MTC continued to do the hauling for Gallatin.

The rising cost of fuel in the late 1970's resulted in problems for both Gallatin and MTC. MTC requested five separate rate increases from Gallatin during the period between 1978-1981. The increased transportation costs resulted in reduced profits prompting Gallatin's board of directors to investigate ways of reducing the operating budget. At that time, the defendant's Montana hauling was being done by two companies. MTC was responsible for the Gallatin valley as well as the Spokane run and Milky Way Trucking covered the western Montana region for Gallatin.

In fall, 1981, Gallatin leased its own tractor-trailer and took over MTC's Spokane run. The Spokane run was terminated on 30 days notice without any objection by MTC. As a result of doing its own hauling to Spokane, Gallatin realized significant savings. Subsequent to assuming the Spokane run, Gallatin's board of directors reviewed all of Gallatin's transportation costs.

In 1982, Gallatin requested that MTC submit a bid covering Gallatin's entire transportation needs. MTC did not object to submitting a bid and did submit a bid. Upon review of the bids, Gallatin decided to lease its own trucks and assume the plant-to-market hauling in the Gallatin valley. At this same time, Gallatin terminated MTC's Gallatin valley agreement on 49 days notice and gave MTC the western Montana routes previously handled by Milky Way. The oral agreement became effective April 1, 1982. The duration of the 1982 agreement has been the subject of intense dispute between the litigants. After the new contract had been negotiated MTC

borrowed a significant amount of money to improve its operation.

In March, 1983, Lloyd Moats met with Gallatin's board of directors and requested that MTC be granted another rate increase. Moats brought documents which suggested that MTC could not stay solvent operating under the 1982 agreement. A new rate increase was negotiated and granted. This agreement became effective April 1, 1983.

In May, 1983, Gallatin's board of directors again met to look into alternative means by which to reduce transportation costs. The board concluded that it could save a significant amount of money by doing its own hauling.

Because of the significant savings available, Gallatin decided to terminate the contract with MTC and lease the equipment and vehicles necessary to do its own hauling. Once the leased equipment arrived at Gallatin, MTC was notified that its agreement with Gallatin was terminated. Gallatin gave MTC 48 days notice of termination. MTC did not object to the termination or the notice.

MTC brought this action alleging that the defendants were liable for breach of contract and for breach of the covenant of good faith and fair dealing. The action was tried before a jury in Gallatin County. The jury returned a verdict in favor of the defendant and awarded no damages. The District Court denied MTC's motion for a new trial. MTC appeals from the judgment entered by the court and from the order of the court denying plaintiffs' motion for a new trial.

MTC maintains that the District Court should have permitted Lloyd and Lucille Moats to present their claim for damages for pain, suffering, mental anguish and anxiety to

the jury. MTC further contends the District Court compounded this error by refusing to grant a new trial on this issue. We find the contrary to be true.

In Malcolm v. Stondall Land Co. (1955), 129 Mont. 142, 145, 284 P.2d 258, 260, this Court stated the general rule regarding a stockholder's personal right to sue in the corporation's cause of action:

> . . . As a general rule stockholders may not sue upon a cause of action belonging to their corporation whether in their own names or in the name of the corporation itself.

In Malcolm, this Court addressed for the first time the issue of whether individual shareholders who control all of the stock of the corporation may disregard the corporate entity and sue as individuals on the corporation's cause of action. We held that such individual shareholders do not have the right to pursue an action on their own behalf when the cause of action accrues to the corporation. Malcolm, 129 Mont. at 146, 284 P.2d at 260.

MTC suggests that a "reverse piercing of the corporate veil" should be allowed and that Lloyd and Lucille Moats should be allowed to bring an action for emotional distress on their own behalves. Reverse piercing of the corporate veil for the benefit of the shareholders would allow persons who have incorporated to invoke the corporate entity only when it would be to their advantage.

Under Montana law, it is well settled that a corporation has a separate and distinct identity from its stockholders. Wortman v. Griff (1982), 200 Mont. 528, 534, 651 P.2d 998, 1001; Monarch Fire Insurance Co. v. Holmes (1942), 113 Mont. 303, 124 P.2d 994. In the present case, the oral agreement which is the center of the controversy was between MTC and

- 5 -

Gallatin Dairies. It is MTC, not Lloyd and Lucille Moats, who is the real party in interest in the case at bar.

Rule 17(a), M.R.Civ.P. provides in pertinent part: "Real Party In Interest. Every action shall be prosecuted in the name of the real party in interest."

The argument of Lloyd and Lucille Moats that as sole shareholders of the corporation, their claims for mental and emotional distress should have been submitted is moot. The jury found in favor of the defendant on liability.

We hold that the District Court acted appropriately in refusing to allow Lloyd and Lucille Moats to present evidence relating to mental and emotional distress.

MTC next contends that the District Court erred in ruling that Keith Nye's testimony pertaining to Gallatin's rationale for giving MTC less than two months notice of termination was not hearsay. We affirm the ruling of the District Court.

MTC alleged that Gallatin's conduct in terminating the oral agreement with MTC upon only 48 days notice was unreasonable and constituted a breach of the implied covenant of good faith and fair dealing. In order to rebut MTC's contention, Gallatin's general manager Keith Nye testified as to their reasons for giving only 48 days notice of termination to MTC. In the course of Nye's testimony, he was asked why Gallatin did not immediately inform MTC of Gallatin's decision to terminate the hauling agreement. In response to the question, Nye alluded to a conversation that had taken place between himself and Dan Smith, one of Gallatin's employees. MTC objected to such testimony as hearsay. The District Court discussed the matter in chambers, wherein it was informed as to the content of Nye's

testimony. Nye proposed to testify that Smith had informed him of a conversation between Smith and Moats which occurred during a prior dispute between Gallatin and MTC. In that conversation Moats told Smith that he was through hauling for Gallatin and that MTC would cease hauling immediately.

After listening to the arguments of both counsel, the District Court ruled that such testimony was not hearsay. As it was offered not to prove the truth of the matter asserted (that MTC would immediately refuse to haul any milk upon being given notice of termination) but for the purpose of showing that the statement was made and the resulting effect on Nye's state of mind. Before allowing the disputed testimony to be introduced, the District Court admonished the jury that Nye's testimony relating to his conversation with Smith was admitted only for the purpose of showing that the statements were made, not for the truth of the statements.

Rule 801(c), M.R.Evid. provides the definition of hearsay.

> (c) <u>Hearsay</u>. <u>Hearsay</u> is a statement, other than one made by the declarant while testifying at the trial or hearing, <u>offered</u> in evidence <u>to prove the truth of the matter asserted</u> (Emphasis added.)

The District Court correctly determined Nye's testimony did not fit within the parameters of the Rule 801(c) definition of hearsay. Nye's testimony regarding the statements made to him by Smith to the effect that MTC would immediately stop hauling if Gallatin terminated the agreement, were not offered to prove the truth of the matter asserted. Rather, the statement was made to show the resulting effect on Nye's state of mind, to show why Gallatin reacted as it did and why it waited until it had the leased

- 7 -

trucks on hand before informing MTC that the agreement was being terminated.

This Court addressed a situation similar to the one at hand in Brown v. Homestake Exploration Corp. (1934), 98 Mont. 305, 39 P.2d 168, which involved an action for breach of contract. In Brown, a witness (A) was permitted over a hearsay objection to testify about a conversation that he had with another party (B). The substance of the conversation concerned another conversation that (B) had with yet another party (C). The testimony was permitted not for the purpose of proving the truth of the matter asserted in the various statements but to show that those statements were made and relied on by the testifying witness. Brown, 98 Mont. at 339-340, 39 P.2d at 179.

> Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned.

Brown, 98 Mont. at 340, 39 P.2d at 179-180, quoting Wigmore on Evidence (2d ed.) § 1789. See also Wallace v. Wallace (1929), 85 Mont. 492, 279 P. 374. Nye's testimony was properly admitted by the District Court.

Lastly, MTC contends that the District Court erred in denying a new trial because the verdict reached by the jury was contrary to law. We think otherwise.

MTC's contention is predicated upon two of the District Court's jury instructions. The court's instruction no. 13 provided: "You are instructed that a contract may be oral and not in writing."

The court's instruction no. 15 was given as follows:

> You are instructed that where an agreement contains no provision for its termination and one party to said agreement furnishes a consideration in addition to just providing the service, the agreement may be terminated only after a reasonable time has lapsed and reasonable notice of termination is given.

MTC maintains that the jury's verdict evidences a disregard of the jury instructions and further is contrary to Montana law. MTC submits that in view of the relationship between MTC and Gallatin and in light of the fact that MTC had made substantial investments of time and money in its trucking business in order to provide for Gallatin's needs, the jury abused its discretion in finding 48 days notice of termination was reasonable.

In Bronken's Good Time Co. v. J. W. Brown (1983), 203 Mont. 427, 661 P.2d 861, this Court specifically addressed the issue of who determines what constitutes a reasonable period of time under the circumstances of the case. We held:

> As to what is a reasonable period of time in a given situation, we will defer to the judgment of the trier of fact. Absent an abuse of discretion, this Court will not interfere.

Bronken, 203 Mont. at 432, 661 P.2d at 864.

There was sufficient evidence in the record to support the jury's findings and determinations. There is nothing in the record to suggest that an abuse of discretion occurred on the part of the jury. As such, we defer to the judgment of the trier of fact and will not interfere. We affirm.

_____
Justice

We Concur:

_____
Chief Justice

- 9 -

_John Conway Harrison_

_[signature]_

_R. C. Gulbrandson_

_William E Hunt_

_R. C. McDonough_
Justices