No. 89-113

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 1990

FIRST SECURITY BANK OF GLENDIVE,
a Montana Banking Corporation of
Glendive, Montana,

     Plaintiff, Respondent and Cross-Appellant,

     -v-

LARRY J. GARY and MARY GARY,
husband and wife; R. H. SCHWARTZ
CONSTRUCTION SPECIALTIES, INC.,
a Montana Corporation of Glendive,
Montana,

     Defendants, Appellants and Cross-Respondents,

and

FIRST SECURITY BANK OF GLENDIVE,
a Montana Banking Corporation of
Glendive, Montana,

     Plaintiff, Respondent and Cross-Appellant,

     -v-

GARY DATSUN, INC., a Montana Corporation
of Glendive, Montana,

     Defendant, Appellant and Cross-Respondent.

APPEAL FROM:    District Court of the Seventh Judicial District,
                In and for the County of Dawson,
                The Honorable Leroy L. McKinnon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

             Gene Huntley, Baker, Montana, argued

       For Respondent:

             Thomas Monaghan; Lucas & Monaghan; Miles City,
             Montana, argued

Submitted:  April 24, 1990

Decided:  September 6, 1990

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a judgment notwithstanding the verdict (NOV) entered by the District Court for the Seventh Judicial District, Dawson County. The judgment NOV nullified a jury verdict of over $1.2 million for Larry and Mary Gary. In addition, the District Court decided that punitive damages would not be awarded and entered judgment in favor of First Security Bank on its claims in the amount of $314,272.96 plus interest from date of trial. Larry J. Gary, Mary Gary, and Gary Datsun, Inc., appeal. First Security Bank cross-appeals. We reverse and remand for retrial.

The issues upon which we base our opinion are:

1. Did the District Court err in ruling that there was insufficient evidence to support the jury verdict?

2. Was the judgment denying punitive damages improper?

3. Was Gary Datsun, Inc., properly added as a real party in interest on the counterclaims?

4. Was the jury's award of damages proper?

In 1977, Larry Gary owned an automobile sales and repair business in Glendive, Montana. He and his wife, Mary, did both their personal and business banking with First Security Bank of Glendive (Bank). Larry Gary wanted to expand his business to include a dealership franchise. He consulted with Bank officers about this plan and received advice and encouragement.

In September 1977, the Bank certified a floor plan financing agreement with Larry Gary to the Nissan Corporation. This floor plan financing, essential for the operation of the business, would

1

allow Larry Gary to use a line of credit from the Bank to pay Nissan for vehicles shipped to the dealership. When the vehicles were sold, Larry Gary would use the proceeds to repay the Bank. Nissan granted Larry Gary a franchise contingent on Gary constructing an approved dealership building.

Gary required financing to construct the building and sought the Bank's assistance. On December 14, 1978, the Bank committed to loan $168,000 for the purpose of constructing the dealership facility. The original promissory note, signed by both Larry and Mary Gary and secured by a mortgage on the building, was to be paid and converted to a long term mortgage insured by the Small Business Administration by June 14, 1979.

On December 27, 1978, Larry Gary and Schwartz Construction (Schwartz) entered into a building contract which specified that Schwartz would complete the building by April 30, 1979, for $163,000. The Bank had recommended Schwartz, another of its customers, to Gary. The Garys contended at trial that the Bank pressured them into contracting with Schwartz for the Bank's benefit.

Larry Gary encountered numerous difficulties with Schwartz during the building's construction. These difficulties, their causes, and the attempts to resolve them constituted the bulk of the evidence at trial. The Garys presented evidence that Schwartz initially staked the building in the wrong location, causing additional expense to move utilities; that Schwartz constructed the building with a leaky roof which ruined insulation; that,

in violation of the building contract, Schwartz began building lower level rest rooms with ceilings only six feet high; that Schwartz failed to complete the building even remotely within the contractual time period; and that they were forced to finish the building themselves after Schwartz walked off the job.

On July 25, 1979, the Gary Datsun business was incorporated as Gary Datsun, Inc. The officers of the corporation were Larry Gary, president; Mary Gary, secretary/treasurer; and Phyllis Gary (Larry Gary's mother), vice-president. In August, the Bank made a $7,000 loan to Gary Datsun, Inc.

In September 1979, the dealership building still had not been completed. The corporate minutes of Gary Datsun, Inc., showed that Larry and Mary Gary conveyed all business assets of Gary Datsun to the corporation on September 7, 1979. This was done without the written consent of the Bank as required under the floor plan financing agreement: "Dealer will not lease, pledge, mortgage, encumber or lien any Inventory in which Bank has an interest hereunder . . . without Bank's prior written consent." On September 19, 1979, without notice to the Garys, the Bank took interest due on the building construction loan from the business account of Gary Datsun.

Starting October 1, 1979, Gary Datsun, Inc., no longer made deposits to its account with the Bank, and instead made its deposits in an account with another bank. The Bank discovered this change in banking, and as of November 16, 1979, cancelled its floor plan financing agreement with Larry Gary. Under the agreement

either party could cancel at any time upon notice to the other party. Gary Datsun, Inc., eventually obtained financing from another bank at a higher rate of interest. The Garys state in their briefs that the corporation was dissolved involuntarily in 1986, but the record does not demonstrate that dissolution.

The Bank brought suit against Gary Datsun, Inc., on the $7,000 promissory note dated August 10, 1979. It brought separate suit against Larry and Mary Gary to foreclose the mortgage securing the $168,000 promissory note. The Garys counterclaimed alleging fraud, constructive fraud, breach of a fiduciary relationship, and breach of a covenant of good faith and fair dealing. The two cases were consolidated. An appeal to this Court was filed after a dispute arose over whether Gary Datsun, Inc., could be added as a counterclaim plaintiff. See First Sec. Bank of Glendive v. Gary (1986), 221 Mont. 329, 718 P.2d 1345. On remand, the District Court determined that Gary Datsun, Inc., was a real party in interest as to the counterclaims.

By agreement of the parties, only the counterclaims of Larry J. Gary, Mary Gary, and Gary Datsun, Inc., were tried. Essentially the defendants admitted that the claims of the Bank against them were valid, subject to any judgment on their counterclaims.

The jury was given two special interrogatories. The first asked:

> Is the plaintiff, First Security Bank, liable to defendants Larry J. Gary or Mary Gary or Gary Datsun, Inc., because of fraud or constructive fraud or breach of fiduciary relation or bad faith as defined in the Court's instructions?

4

The jury answered "Yes." The jury awarded defendants Larry and Mary Gary a total of $355,000 in special damages, $800,000 in general damages, and $50,000 in emotional damages. The jury did not award Gary Datsun, Inc., any damages.

The second special interrogatory asked:

Is the First Security Bank liable to Larry J. Gary, Mary Gary or Gary Datsun, Inc. for punitive damages?

The jury answered "Yes." Under § 27-1-221, MCA, that finding made necessary a further hearing before the jury on the amount of punitive damages to be awarded. After the verdict was read, the court determined that it would reconvene later on Sunday morning for the punitive damages hearing.

At the 10:00 a.m. Sunday morning session, counsel and the court first met in chambers. Counsel for the Bank informed the court of his belief that there would be a run on the Bank if its precarious financial position were disclosed in the hearing on punitive damages. The court ruled as a matter of law that no punitive damages would be allowed. It dismissed the jury and requested briefing of motions before it would enter judgment.

After briefing, the court granted the Bank's motion for judgment NOV. It also entered judgment for the Bank on the mortgage foreclosure and the promissory note. This appeal followed.

I

Did the District Court err in ruling that there was insufficient evidence to support the jury verdict?

Four theories were presented as bases for the claims for

5

damages against the Bank - fraud, constructive fraud, breach of the covenant of good faith and fair dealing, and breach of a fiduciary duty. The special interrogatories did not require the jury to specify under which theory it found the Bank liable. The court granted the motion NOV on the grounds of lack of evidence to support the verdict.

In considering a motion for judgment NOV, the evidence must be viewed in a light most favorable to the non-moving party. Nicholson v. United Pacific Ins., Co. (1985), 219 Mont. 32, 37, 710 P.2d 1342, 1345. The motion must be denied if a prima facie case has been made out, and if there is substantial conflict in the evidence, the motion cannot be granted. Nicholson, 710 P.2d at 1345.

In its answer to the cross-complaint, the Bank admitted "that a fiduciary relationship existed between [itself] and defendants Gary." The jury was instructed that although a fiduciary relationship does not ordinarily arise when a bank transacts business with a depositor or other customer, "[a] fiduciary relationship and duty of disclosure may be created when a customer relies upon the bank for advice on financial matters" and that "[t]he fiduciary relationship implies that the principal has reposed some trust or confidence in the fiduciary, and the fiduciary is bound to exercise the utmost good faith, loyalty and honesty toward his principal."

Larry Gary testified that Mr. Lilejord, President of the Bank, encouraged him to pursue a Datsun dealership. He testified that

6

Datsun's approval for the franchise was contingent upon his building a new Datsun sales facility. He testified that Miss Remillard, the loan officer at the Bank, told him, in effect, that he must hire Schwartz as the contractor on this job. The Bank admittedly did not disclose to Gary that Schwartz had outstanding loans from the Bank. The Garys contended that Schwartz was in a precarious financial position which later resulted in bankruptcy.

Miss Remillard testified that she vetoed inclusion in the building contract of a penalty clause to be applied in case Schwartz did not complete the building on time. She also testified that she exercised the authority to decide when and how much Schwartz was paid and that it was the Bank's responsibility to insure that money was not paid out before work was completed. Ten percent of the money was to be withheld until construction was completed. Additionally, a specific cost breakdown had been prepared with respect to each major component of the building. However, by September 1979, the Bank notified the Garys that there was not enough money left in the building account to complete the building.

Viewing the evidence in the light most favorable to the Garys, we conclude that there was substantial evidence from which a jury could have concluded that the Bank breached a fiduciary duty to the Garys in requiring Larry Gary to hire Schwartz as the contractor on the building, in failing to require Schwartz to properly complete the building within the contractual time frame, and in disbursing building funds without adequately protecting the Garys.

Damages for those breaches could include the costs of completing the building and losses caused by the delay in its completion. Without considering the other theories of liability offered by the Garys, we hold that the entry of judgment NOV was reversible error and that this case must be remanded for retrial. For the reasons explained below under Issue IV, we do not reinstate the jury's verdict.

## II

Did the District Court err in refusing to submit the issue of punitive damages to the jury?

The controlling law on punitive damages is set forth at § 27-1-221(6) and (7), MCA:

> (6)   Liability for punitive damages must be determined by the trier of fact, whether judge or jury.
>
> (7)(a)   Evidence regarding a defendant's financial affairs, financial condition, and net worth is not admissible in a trial to determine whether a defendant is liable for punitive damages.  When the jury returns a verdict finding a defendant liable for punitive damages, the amount of punitive damages must then be determined by the jury in an immediate, separate proceeding and be submitted to the judge for review as provided in subsection (7)(c).   In the separate proceeding to determine the amount of punitive damages to be awarded, the defendant's financial affairs, financial condition, and net worth must be considered.
>
> . . .
>
> (c)   The judge shall review a jury award of punitive damages, giving consideration to each of the matters listed in subsection (7)(b).  If after review the judge determines that the jury award of punitive damages should be increased or decreased, he may do so.  The judge shall clearly state his reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award

8

of the jury in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in subsection (7)(b).

The second special interrogatory required the jury to determine if the Bank was liable for punitive damages, and the jury answered "Yes" to that second interrogatory. Under the statute, the District Court should have held an immediate, separate proceeding for the determination of the amount of punitive damages, but failed to do so. As a result, the District Court determination that no punitive damages would be allowed was premature and not allowed under the statute. We hold that the finding that the Garys were not entitled to punitive damages was reversible error.

## III

Was Gary Datsun, Inc., properly added as a real party in interest on the counterclaims?

Rule 17(a), M.R.Civ.P., provides that "Every action shall be prosecuted in the name of the real party in interest." The "real party in interest" is the party who has the right sought to be enforced. 3A J.Moore, Federal Practice, § 17.02 at 42 (1989). The District Court ruled that Gary Datsun, Inc., was a real party in interest on the counterclaims originally brought by Larry and Mary Gary individually, noting that the counterclaims run to the benefit of Gary Datsun, Inc.

As discussed below under Issue IV, the evidence at trial showed that a large portion of the damages claimed under the counterclaims were suffered by Gary Datsun, Inc. We hold that Gary Datsun, Inc., is a real party in interest and was properly joined.

IV

Is the jury's award of damages proper?

The jury allocated all damages to the Garys individually. The record shows that the Garys' attorney argued that this would be proper because the corporation was closely held and had been dissolved by the time of trial. We cannot agree with that position.

A corporation has a separate and distinct identity from its stockholders. Wortman v. Griff (1982), 200 Mont. 528, 534, 651 P.2d 998, 1001. The general rule is that stockholders may not sue upon a cause of action belonging to their corporation. Malcom v. Stondall Land and Investment Company (1955), 129 Mont. 142, 145-46, 284 P.2d 258, 260. As this Court has stated, such a reverse piercing of the corporate veil "would allow persons who have incorporated to invoke the corporate entity only when it would be to their advantage." Moats Trucking Co. v. Gallatin Dairies (1988), 231 Mont. 474, 477, 753 P.2d 883, 885.

The Garys argue that at the time of trial, Gary Datsun, Inc., had been involuntarily dissolved, and that Larry Gary and Mary Gary, as the primary stockholders and the trustees for creditors and stockholders, were entitled to all damages. Under § 35-6-104(5), MCA, the directors of an involuntarily dissolved corporation shall hold the corporation's property in trust. The record is devoid of evidence of the dissolution of the corporation and of the status of Larry Gary and Mary Gary with regard to the dissolved corporation. Whether the stockholders of a corporation

are entitled to any of the corporate assets depends upon the extent and nature of the claims which may be properly made against the corporation. In view of the fact that Gary Datsun, Inc., failed as a going business, the possibility of other claimants, including creditors, is clearly present.

The only evidence in the present case supporting the $800,000 awarded in general damages was a calculation of lost profits submitted by an expert witness for the Garys. He gave $899,072 as the present value (at time of trial) of the Gary Datsun dealership's lost profits for the years 1979 to 1986. During those years, Gary Datsun, Inc., owned the business, not Larry and Mary Gary personally. As a result, there was an absence of any proof of lost profits by Larry Gary and Mary Gary.

In a similar manner, the evidence in support of special damages consisted of cancelled checks written on the account of Gary Datsun, Inc. Again this demonstrates damages, if any, only as to the corporation and not as to the Garys individually. We therefore hold that the award of general and special damages to Larry J. Gary and Mary Gary was improper and that it constitutes reversible error.

Because of our answers to the issues set forth above and our ruling that this case must be retried, we need not discuss the other issues raised on appeal and cross-appeal. In view of the potential offset should the Garys be successful in a new trial on their counterclaims, we conclude that it would not be appropriate to affirm the judgment in favor of the Bank on its claims. We

11

therefore reverse on that aspect as well. This matter is remanded to the District Court for the Seventh Judicial District, Dawson County, for retrial.

/s/ _____
Justice

We Concur:

/s/ _____
Chief Justice

/s/ _____

_____

_____
Justices

/s/ _____
District Judge Ted Mizner
sitting for Justice R.C.
McDonough

12

Justice John Conway Harrison dissenting.

I would reinstate the jury's verdict which was set aside by the District Court, provide an off-set to the damages in favor of the Garys for the amounts of the notes held by the Bank, and terminate the case without further reference to a jury for punitive damages. I base this opinion on two grounds: (1) the error in not submitting punitive damages to the same jury is now incurable; and (2) the purpose of punitive damages, by way of punishment to the Bank cannot be effectuated because that Bank has now gone out of existence.

It is unbelievable to me how the District Court dispensed with the punitive damages question. The record shows that the jury held that the Garys were entitled to punitive damages, and the District Court, upon a mere suggestion of counsel for the Bank that a punitive damage award would cause a run on the Bank, refused to submit the issue to the jury which was sitting there waiting to go on. This error is especially grievous, because if the jury had awarded excessive damages, damages that the District Court could not accept, the court had the right to reduce those damages or to remit them altogether upon later review.

In this case, the Bank's argument in seeking to reverse the verdict or remand for a new trial is that the damages accrued to the corporation and not to the Garys personally, and therefore a new trial is required to separate the damages due the corporation from the damages due to the Garys. However, here the jury found no damages in this case for the corporation, and awarded all the

13

damages to the Garys. The majority's reversal of the verdict in favor of the Garys for a new trial on that ground does violence to what has happened in this case.

The record indicates that the Bank made a letter agreement with Larry and Mary Gary to provide floor plan financing for their Datsun franchise in Glendive. It also acted as their agent in obtaining financing from the SBA for a building in which the business was to be located. Although the Bank admitted a fiduciary relationship in its pleadings, the court allowed the question of whether a fiduciary relationship existed between the Garys and the Bank to go to the jury. This was totally unnecessary, and the jury obviously determined this issue in favor of the Garys. The Bank provided financing under two notes, one for $7,000 signed by Gary Datsun Inc., which with interest came to $13,894.28 when the court rendered judgment. The second note signed by Larry and Mary Gary for $150,455.13 for which the court rendered judgment with interest and costs came to the sum of $300,378.68.

During the construction of the building, the jury found that the Bank paid more to the contractor (who was indebted to the Bank) than he was entitled, did not keep a reserve of ten percent as the construction costs were advanced, and refused to apply for a renewal of SBA's commitment for the construction of the building. The Bank claimed, and still claims in its appellate brief, that it never consented to the assignment to Gary Datsun, Inc.; yet the Bank accepted deposits in that name and certainly issued one of its notes to the corporation.

Without notice to the Garys, the Bank exercised a claimed

14

right of set-off by taking interest due on its notes from the business account of Gary Datsun. At that point, understandably, Larry Gary decided to make deposits in another bank to prevent setoffs. Immediately the Bank sent a notice to them terminating its floor plan financing. The Garys were forced to go to another bank, and pay a higher interest rate for their financing.

The record indicates that the building was appraised somewhere in the area of $295,000. Under the judgment as it now stands, after the District Court set aside the verdict for the Garys, they will not only lose their building, but be subjected to a deficiency judgment approaching the original costs of the building.

Here, I find the evidence supported the verdict for the Garys, and base this upon my review of the final arguments made to the jury. The special damages, interest, attorney's fees, accounting fees, bank application fees, amount for completing the building, and all the other items came to $182,284, which the economist who testified placed a value at the time of trial at $413,657. No objection was made to these figures at the time of final argument, and the award of special damages to each of the Garys does not exceed that sum.

Involved here also were damages for emotional distress. Mary Gary apparently attempted to commit suicide sometime following the Bank's actions. The jury determined that the Garys' emotional distress was a result of the Bank's action, and awarded each of the Garys $25,000 for emotional distress.

The jury's awards of $25,000 for emotional distress and special damages are supported by the evidence and should never have

15

been reversed. The general damages may include projections for the business conducted by Gary Datsun, Inc. but that is not important now.

It is interesting to note that in the records of the office of the Secretary of State of the State of Montana, is a notice of involuntary dissolution dated December 8, 1986, under which the Secretary of State involuntarily dissolved the Gary Datsun corporation, which had the effect that the corporation forfeited all its rights to carry on a business within the State of Montana. When that occurs, under § 35-6-104(5), MCA, the following is the result:

> (5)   In the case of involuntary dissolution, all the property and assets of the dissolved corporation shall be held in trust by the directors of such corporation and 35-1-921 or 35-2-711, whichever is appropriate, is applicable to liquidate such property and assets if necessary.

I dissent.

_____
Justice

Justice John C. Sheehy and Justice William E. Hunt, Sr., join in the foregoing dissent of Justice John C. Harrison.

_____

_____
Justices

16