DA 12-0489

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 106

MICHAEL SULLIVAN,

       Plaintiff and Appellant,

   v.

CONTINENTAL CONSTRUCTION
OF MONTANA, LLC,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DV 11-119A
                    Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Todd Shea, Shea Law Firm, P.L.L.C.; Bozeman, Montana

       For Appellee:

              Edmond E. Koester; Coleman, Yovanovich & Koester, P.A.; Naples,
              Florida

              Dennis P. Clarke; Smith, Walsh, Clarke & Gregoire, PLLP; Great Falls,
              Montana

Submitted on Briefs:  February 27, 2013
Decided:  April 23, 2013

Filed:

_____
                           Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Michael Sullivan (Sullivan) filed a wrongful discharge action in the Eighteenth Judicial District, Gallatin County. The District Court granted summary judgment in favor of Continental Construction of Montana, LLC (Continental Construction). Sullivan appeals. We affirm.

¶2 Sullivan presents the following issues on appeal:

¶3 *Whether the District Court properly concluded that Continental Construction had good cause to terminate Sullivan's employment?*

¶4 *Whether Continental Construction improperly considered hearsay evidence in deciding to terminate Sullivan's employment?*

¶5 *Whether the District Court improperly considered hearsay evidence in concluding that Continental Construction had good cause to terminate Sullivan's employment?*

¶6 *Whether the District Court properly concluded that Continental Construction did not violate the provisions of its employee handbook when it terminated Sullivan's employment?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶7 Continental Construction operates a construction company from its headquarters in Florida. Continental Construction hired Sullivan as a construction site supervisor in April 2008. Sullivan directly supervised many of Continental Construction's employees in Montana. Sullivan also worked directly with many of Continental Construction's subcontractors and clients.

2

¶8      Sullivan left Montana on a scheduled vacation on October 21, 2010. John Cecil (Cecil), the Vice President of Construction for Continental Construction, travelled to Montana from Florida to replace Sullivan while Sullivan was on vacation. A group of Continental Construction employees approached Cecil that same day. The employees informed Cecil that they were unhappy with Sullivan as a supervisor. Cecil understood that these employees were threatening to quit unless Continental Construction immediately terminated Sullivan's position as their supervisor.

¶9      Cecil called Peg Wilson (Wilson), Continental Construction's office manager in Florida, to inform her of the employees' dissatisfaction with Sullivan. Wilson instructed Cecil to interview each of the employees individually about their experiences with Sullivan. John Wallace (Wallace), the administrator for Continental Construction in Montana, helped Cecil conduct these interviews the following day, on October 22, 2010.

¶10     These interviews revealed that many employees felt that Sullivan routinely made demeaning and derogatory comments about Continental Construction's management to both employees and non-employees. Sullivan also made derogatory and demeaning comments to employees and subcontractors about their work. Several employees reported that Sullivan often showed up late to work and would disappear for extended periods of time during the working shift. Many employees believed that Sullivan negatively affected employee morale.

¶11     Wallace e-mailed to Wilson copies of his notes from the employee interviews that same day. Wilson shared the notes with James Murphy (Murphy), the sole owner and president of Continental Construction, and Michael Kluck (Kluck), a Continental

3

Construction supervisor in Florida. Wilson, Murphy, and Kluck determined that Sullivan's conduct did not meet the standards for Continental Construction supervisors. Wilson, Murphy, and Kluck decided to terminate Sullivan's employment immediately.

¶12 Continental Construction contacted Sullivan by telephone on October 26, 2010, to notify him that his employment had been terminated. Continental Construction provided Sullivan with a letter that set forth the reasons for his discharge. The letter stated that Sullivan had been discharged for treating employees and subcontractors in a demeaning manner; for having frequent unexplained absences from work; for speaking to others in a derogatory manner about customers and employees; and for behaving in a manner that did not meet the standards of Continental Construction.

¶13 Sullivan filed an action that alleged that Continental Construction had violated the Montana Wrongful Discharge from Employment Act (WDEA), §§ 39-2-901 to 39-2-915, MCA. Continental Construction defended on the basis that it had terminated Sullivan's employment for a valid business reason. Sullivan and Continental Construction filed cross-motions for summary judgment. The District Court granted Continental Construction's motion for summary judgment. Sullivan appeals.

## STANDARD OF REVIEW

¶14 We review de novo a district court's grant of summary judgment. *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 19, 330 Mont. 48, 125 P.3d 1121. We apply the same method of evaluation applied by the district court. *McConkey*, ¶ 19. Summary judgment is proper if no genuine issues of material fact exist and the moving party is entitled to judgment

4

as a matter of law. *McConkey*, ¶ 19. The party seeking summary judgment possesses the burden of establishing a complete absence of any genuine issues of material fact. *McConkey*, ¶ 19. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *McConkey*, ¶ 19.

## DISCUSSION

¶15 Sullivan argues that he raised genuine issues of material fact to suggest that Continental Construction violated WDEA when it terminated Sullivan. Sullivan first argues that he raised genuine issues of material fact to demonstrate that Continental Construction had discharged him without good cause, in violation of § 39-2-904(1)(b), MCA. Sullivan claims that the District Court improperly relied upon hearsay evidence in finding that Continental Construction possessed good cause. Sullivan further argues that he raised genuine issues of material fact to demonstrate that Continental Construction had not followed the provisions of its employee handbook when it terminated his employment, in violation of § 39-2-904(1)(c), MCA.

¶16 *Whether the District Court properly concluded that Continental Construction had good cause to terminate Sullivan's employment?*

¶17 A discharge is wrongful if no good cause exists for the termination. Section 39-2-904(1)(b), MCA. Good cause includes a legitimate business reason. A legitimate business reason involves "a reason that is neither false, whimsical, arbitrary or capricious and it must

have some logical relationship to the needs of the business." *McConkey*, ¶ 26 (quoting *Buck v. Billings Mont. Chevrolet, Inc.*, 248 Mont. 276, 281-82, 811 P.2d 537, 540).

¶18 This Court has stressed the importance of the "right of an employer to exercise discretion" over whom "it will employ and keep in employment." *McConkey*, ¶ 26 (quoting *Buck*, 248 Mont. at 282, 811 P.2d at 540). We afford employers the greatest discretion where an employee occupies a "sensitive" managerial position and exercises "broad discretion" in his job duties. *McConkey*, ¶ 26. We have emphasized that a court should not become involved in the day-to-day employment decisions of a business regarding its management. *McConkey*, ¶ 26 (quoting *Buck*, 248 Mont. at 282, 811 P.2d at 541).

¶19 This Court considered an employer's desire to hire a trusted manager in *Buck*. Jim Buck (Buck) served as general manager at a Chevrolet dealership. *Buck*, 248 Mont. at 279, 811 P.2d at 539. F.S. Enterprises purchased the dealership and promptly terminated Buck's employment. *Buck*, 248 Mont. at 280, 811 P.2d at 539. F.S. Enterprises did not allege that Buck had engaged in any wrongful conduct that merited termination. In fact, Buck had been an exemplary employee. *Buck*, 248 Mont. at 279, 811 P.2d at 539. F.S. Enterprises nevertheless replaced Buck as general manager with a longtime employee of F.S. Enterprises.

¶20 The controlling stockholder of F.S. Enterprises lived in Louisiana. He wanted a long-term employee whom he trusted to manage his new investment in Montana. *Buck*, 248 Mont. at 282, 811 P.2d at 541. This Court recognized that it would be "against common sense and rationality" to force F.S. Enterprises to "retain someone who it did not know or

6

perhaps even trust to manage a large dollar investment." *Buck*, 248 Mont. at 282-83, 811

P.2d at 541. This Court agreed that F.S. Enterprises possessed a legitimate business reason

to terminate Buck. *Buck*, 248 Mont. at 283, 811 P.2d at 541.

¶21 The Court cautioned, however, that its determination applied only to employees who

"occupy sensitive managerial or confidential positions" that "require the exercise of broad

discretion." *Buck*, 248 Mont. at 283, 811 P.2d at 541. A company's interest in "running its

business as it sees fit" would not apply to a decision to terminate a lower echelon employee.

*Buck*, 248 Mont. at 283, 811 P.2d at 541.

¶22 This Court considered again in *McConkey* a firm's interest in employing a manager

whom it could trust. Warren McConkey (McConkey) served as the general manager of

Flathead Electric Cooperative (FEC). *McConkey*, ¶ 8. McConkey convinced FEC to acquire

another utility. *McConkey*, ¶ 9. FEC's debt to equity ratio fell to the low single digits after

FEC's acquisition of the other utility. *McConkey*, ¶ 27. FEC also substantially increased its

electricity rates, including 6.9% in 2000, 29% in April 2001, and 12.5% in October 2001.

*McConkey*, ¶ 11. The FEC Board of Trustees voted unanimously in February 2002 to

terminate McConkey's employment as the general manager. *McConkey*, ¶ 14.

¶23 This Court determined that FEC possessed a legitimate business reason to terminate

McConkey's employment. *McConkey*, ¶ 31. FEC believed that McConkey's managerial

decisions had caused substantial damage to the company. *McConkey*, ¶ 31. FEC possessed

broad discretion to terminate employment of a general manager if he failed to perform his

job satisfactorily. *McConkey*, ¶ 31.

7

¶24 Sullivan, similar to McConkey and Buck, occupied a managerial position within his company. Continental Construction's executives work in Florida. Continental Construction argues that the lack of daily oversight from its Florida executives made it especially important to employ a trustworthy construction site manager in Montana. *See Buck*, 248 Mont. at 282, 811 P.2d at 541. Sullivan had engaged in activities that Continental Construction feared would cause substantial damage to the company. *See McConkey*, ¶ 31.

¶25 Continental Construction possessed broad discretion to terminate a person in an executive position, like Sullivan, if he had failed to fulfill his job requirements. *See McConkey*, ¶ 31. Continental Construction also possessed broad discretion to terminate Sullivan if it believed it could not trust him as a manager to run the day-to-day operations. *See Buck*, 248 Mont. at 282, 811 P.2d at 541. Here, Continental Construction concluded on the basis of its investigation that Sullivan had failed to fulfill the requirements of his managerial position and had failed to act in a trustworthy manner. We agree with the District Court that Continental Construction made what it determined to be a legitimate business decision to terminate Sullivan's employment. We afford considerable discretion to Continental Construction's decision. *See McConkey*, ¶ 31; *Buck*, 248 Mont. at 282, 811 P.2d at 541.

¶26 Sullivan argues that he raised genuine issues of material fact to suggest that Continental Construction lacked good cause to terminate his employment. Sullivan points to statements by other Continental Construction employees who indicated that Sullivan had not acted inappropriately in their presence. Sullivan also argued that he regularly had invited his

8

employees over to his house for dinner and recently organized a group golf trip for his employees.

¶27 The fact that not every Continental Construction employee complained about Sullivan failed to undermine the validity of Continental Construction's conclusion that Sullivan's continued employment could threaten its future viability in Montana. Similarly, the fact that Sullivan apparently treated some employees well does not challenge the validity of the complaints made by other Continental Construction employees. Sullivan failed to present material and substantial evidence to raise a genuine issue of material fact as to whether Continental Construction possessed a legitimate business reason to terminate Sullivan's employment. *McConkey*, ¶ 19.

¶28 *Whether Continental Construction improperly considered hearsay evidence in deciding to terminate Sullivan's employment?*

¶29 Sullivan argues that Continental Construction improperly relied upon hearsay statements from Continental Construction employees when it made the determination to terminate Sullivan's employment. Sullivan points out that the Continental Construction managers who made the decision to terminate Sullivan's employment never had spoken directly with the employees who had complained about Sullivan. Sullivan contends that Continental Construction acted arbitrarily and capriciously when it terminated Sullivan's employment based entirely on hearsay statements detailed in the interview notes.

¶30 No legal authority supports the notion that a business cannot rely on hearsay statements when it makes a business judgment regarding whether to terminate an employee.

The Montana Rules of Evidence, which limit the admissibility of hearsay evidence, apply only to courts, not to private businesses. *See* M. R. Evid. 101. Further, it would have been impractical to have required Continental Construction's managers in Florida to conduct in-person interviews with each employee in Montana before having made a determination whether to terminate Sullivan's employment. Nothing prohibited Continental Construction from directing two of its employees to conduct interviews in Montana and report their findings to the management in Florida. Nothing prohibited Continental Construction from relying on these reports when it made its determination whether to terminate Sullivan's employment.

¶31 *Whether the District Court improperly considered hearsay evidence in concluding that Continental Construction had good cause to terminate Sullivan's employment?*

¶32 Sullivan next argues that the District Court improperly considered hearsay evidence as it determined whether Continental Construction possessed good cause to terminate Sullivan's employment. Hearsay is a statement, other than one made by the declarant while testifying, offered into evidence to prove the truth of the matter asserted. M. R. Evid. 801. Evidence introduced for a purpose other than to establish the truth of the statement is not hearsay. *See Moats Trucking Co. v. Gallatin Dairies*, 231 Mont. 474, 479, 753 P.2d 883, 886 (1988).

¶33 Continental Construction submitted the depositions of Cecil, Wallace, Wilson, Murphy, and Kluck in support of its motion for summary judgment. These Continental Construction managers described having conducted interviews with employees, having taken notes, having submitted those notes to the Florida office, and the decisions made in the

10

Florida office based on those notes. Continental Construction also submitted the underlying interview notes. Continental Construction admits that this evidence would have represented inadmissible hearsay if Continental Construction had offered it to prove the truth of the allegations against Sullivan.

¶34 Continental Construction argues instead that it introduced the interview notes and depositions to explain its subsequent decision to terminate Sullivan's employment. Continental Construction contends therefore that this evidence did not represent inadmissible hearsay. *See Moats*, 231 Mont. at 479, 753 P.2d at 886. We agree. The statements contained in the reports that Continental Construction received from its employees formed the basis for its decision to terminate Sullivan's employment. The District Court properly considered this evidence when it determined that Continental Construction possessed a legitimate business reason that was not false, whimsical, arbitrary or capricious, when it terminated Sullivan's employment. *See Moats*, 231 Mont. at 479, 753 P.2d at 886.

¶35 Continental Construction further argues that the WDEA does not require it to prove the truth of the allegations of bad behavior against Sullivan. In light of Sullivan's managerial status and the employer's basis for dismissing him, the WDEA requires the District Court to consider whether Continental Construction possessed a business reason that was not arbitrary or capricious to terminate Sullivan's employment. *McConkey*, ¶ 26. The District Court properly considered whether Continental Construction, based on the information that it had before it, acted arbitrarily or capriciously when it terminated Sullivan's employment. Sullivan has not argued or provided any evidence that Continental

11

Construction fabricated the employee reports as a pretext to terminate Sullivan's employment or that Continental Construction otherwise acted in bad faith. Nothing in the WDEA requires the District Court to conduct independent fact-finding to determine the truth of the allegations against Sullivan under the facts presented here.

¶36 Sullivan further alleges that Continental Construction terminated his employment based on a mistake. Sullivan argues, as a result, that the District Court should have evaluated the truth of the allegations against Sullivan. Sullivan cites a Ninth Circuit decision, *Marcy v. Delta Airlines*, 166 F.3d 1279 (9th Cir. 1999), for the proposition that the District Court needed to consider the truth of the allegations against Sullivan to conclude that Continental Construction had not terminated Sullivan's employment based on a mistake.

¶37 The employer in *Marcy* terminated an employee after she had falsified her payroll records. The employee introduced evidence to suggest that she had falsified the payroll record inadvertently and therefore had been terminated based on a mistake. *Marcy*, 166 F.3d at 1280. The Ninth Circuit determined that Montana law precludes summary judgment when an employee claims that the employer terminated her employment based on a mistake, even if no evidence existed that the employer acted in bad faith. *Marcy*, 166 F.3d at 1287.

¶38 Sullivan has offered no evidence that Continental Construction decided to terminate Sullivan's employment based on a mistake. Sullivan offered evidence that some employees and subcontractors stated that they had enjoyed working with Sullivan and that he had not acted inappropriately toward them. Continental Construction possessed substantial conflicting evidence in the interview notes. Continental Construction made a business

12

judgment to terminate an employee who acted inappropriately some, but perhaps not all, of the time. No issue of mistake existed here. The WDEA does not require the District Court to conduct independent fact-finding to determine the truth of the allegations against Sullivan under the facts presented here.

¶39 *Whether the District Court properly concluded that Continental Construction did not violate the provisions of its employee handbook when it terminated Sullivan's employment?*

¶40 Sullivan next argues that Continental Construction wrongfully discharged him when it violated the protocols set forth in the employee handbook. Continental Construction provided Sullivan with no prior written warning. Sullivan argues that the employee handbook required Continental Construction to give him two prior written warnings before Continental Construction could terminate his employment.

¶41 Continental Construction's employee handbook provides that "[a] violation . . . will result in the issuance of a written warning unless the seriousness of the violation calls for a stronger disciplinary action." The employee handbook lists "types of conduct" that may lead to disciplinary action "up to and including immediate termination of employment." The employee handbook preserved Continental Construction's right to terminate immediately an employee based on the "seriousness of the violation."

¶42 Continental Construction's employee handbook provided that Continental Construction could terminate Sullivan immediately for any of the reasons enumerated in its termination letter. The employee handbook stated that "excessive tardiness or absenteeism" could result in termination of employment. Engaging in "conduct detrimental to Continental

13

Construction and/or its efficient operation" could result in immediate termination. The employee handbook further provided that "this is not an all-inclusive listing of unacceptable behaviors. Other types of conduct will be evaluated and handled according to the severity of the conduct."

¶43 A review of Continental Construction's employee handbook demonstrates that no guarantee existed that Sullivan would receive two written warnings before Continental Construction could terminate his employment. The employee handbook provides that Continental Construction could terminate employees immediately for a variety of misconduct. This misconduct includes the types of activities for which Continental Construction terminated Sullivan's employment.

¶44 Further, Continental Construction possessed more leeway in determining whether to give written warnings or to terminate Sullivan's employment immediately after Continental Construction learned that Sullivan, a manager, had engaged continually in multiple violations of the employee handbook. This Court may have more closely scrutinized Continental Construction's decision to terminate Sullivan's employment immediately if Continental Construction had learned of only one violation, or had learned of a violation committed by a lower echelon employee. *See Buck*, 248 Mont. at 283, 811 P.2d at 541.

¶45 Sullivan next argues that Continental Construction violated the employee handbook by failing to provide Sullivan with a "fair" and "thorough" hearing before it terminated his employment. Continental Construction provided Sullivan with no chance to explain his actions before it made the decision to terminate his employment. The employee handbook

14

does not guarantee, as Sullivan argues, that Continental Construction will "fairly" and "thoroughly" discuss disciplinary matters with an employee before it terminates his employment. The employee handbook discusses "fair" and "thorough" in a section entitled Grievance Problem-Solving. This section discusses the process that Continental Construction will follow when an employee complains about a problem that he is experiencing at work. The employee handbook does not discuss "fair" or "thorough" in relation to its disciplinary procedure.

¶46 Continental Construction attempted to address fairly and thoroughly concerns raised by its Montana employees regarding Sullivan's conduct. Continental Construction interviewed each employee individually and provided the notes taken during those interviews to the office in Florida. Continental Construction ultimately determined that the employees' concerns merited the removal of their immediate supervisor, Sullivan. Continental Construction did not violate the provisions of its employee handbook in the manner that it terminated Sullivan's employment.

¶47 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER

15