# ELIZABETH "BETSY" BAUMGART, Plaintiff and Appellant, v. STATE OF MONTANA, DEPT. OF COMMERCE, and DOES 2-15, inclusive, Defendants and Appellees.

No. DA 13-0564.
Submitted on Briefs April 16, 2014.
Decided July 22, 2014.
2014 MT 194.
376 Mont. 1.
332 P.3d 225.

For Appellant: **Michael J. San Souci**, San Souci Law Office, Bozeman; **Timothy C. Kelly**, Attorney at Law, Emigrant.

For Appellee: **W. Anderson Forsythe**, Moulton Bellingham PC, Billings.

¶1 Appellant Elizabeth "Betsy" Baumgart, the former administrator of the Montana Tourism and Promotion Division of the Department of Commerce (DOC or the Department), appeals the First Judicial District Court's orders dated April 22 and July 12, 2013, granting partial summary judgment to DOC, dismissing Baumgart's claims against DOC director Dore Schwinden, and affirming DOC's decision to terminate her employment. We affirm.

## ISSUES

¶2 A restatement of Baumgart's issues on appeal is:

¶3 Did the District Court err in granting DOC's motions for partial summary judgment as they pertained to: (1) political affiliation discrimination; (2) individual claims against DOC director Dore Schwinden; (3) whether the Department had good cause to terminate her employment; and (4) whether the Department violated express provisions of its written personnel policies pertaining to progressive discipline?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In 2002, Betsy Baumgart was appointed by then-Governor Judy Martz to be the administrator of the Montana Tourism and Promotion Division of DOC (Tourism Division or Division). As administrator of the Tourism Division, Baumgart was charged with developing and funding programs designed to promote Montana as a general vacation destination as well as a destination for the production of motion pictures and television commercials. In her appointed capacity, Baumgart managed an annual budget of between $8 and $15 million and supervised 25-30 employees. A significant portion of Baumgart's duties involved monitoring fiscal operations, fund balances, and accounting transactions to ensure compliance with applicable law and effective use of the Division's funds. As administrator, Baumgart was advised early in her tenure that any unused and accumulated Tourism Division funds could be permanently "swept" by the Legislature into the State's general fund budget. The Legislature had taken such action

in 2003 shortly after Baumgart had become administrator.

¶5 During the majority of Baumgart's tenure as administrator, Tony Preite was the Department's director and Baumgart's immediate supervisor. Baumgart consistently received satisfactory or better performance evaluations from 2002 until her termination in 2010. In 2010, immediately after Preite retired, then-Governor Brian Schweitzer appointed Dore Schwinden as DOC director. On August 20, 2010, just days after Schwinden's arrival, he terminated Baumgart's employment citing multiple reasons, including a lack of management competencies and sufficient understanding of the Division's budget and the budgeting process. Baumgart subsequently filed an administrative grievance against DOC and Schwinden, claiming her termination was politically motivated because she was a Republican and Schwinden, as well as Schweitzer, were Democrats.

¶6 A grievance hearing was held on October 26 and 27, 2010. On November 15, 2010, the hearing examiner issued her non-binding Findings of Fact and Recommendation. She determined that the Department was justified in discharging Baumgart for failure to adequately manage the Division's budget. The examiner further concluded that the remaining reasons the Department put forth for terminating Baumgart were without merit.

¶7 On November 16, 2010, Schwinden notified Baumgart by certified letter that DOC had adopted the hearing examiner's recommendation and her termination was final. Schwinden informed Baumgart that she had the right to appeal her termination to the state district court in accordance with § 2-4-702, MCA. However, Baumgart filed a formal charge with the Montana Human Rights Bureau (HRB) alleging violations of her fundamental rights under the Montana Human Rights Act (HRA), § 49-2-308, MCA, to be free from politically-motivated discrimination. She also claimed that under the Governmental Code of Fair Practices (GCFP), § 49-3-201, MCA, she was entitled to be retained and evaluated on the basis of merit, without regard to political affiliation. She asserted that DOC failed to comply with the GCFP and that its reason for discharging her was a pretext for discrimination. HRB subsequently issued a right-to-sue notice.

¶8 Upon receipt of HRB's right-to-sue notice in May 2011, Baumgart initiated this action in the First Judicial District Court, Lewis and Clark County, against the Department of Commerce and Schwinden, individually and as DOC's agent, (hereinafter, unless otherwise specified, collectively "DOC") alleging that DOC had (1) wrongfully discharged her without just cause; (2) violated her HRA and GCFP civil

rights by engaging in political discrimination against her; and (3) violated her privacy rights and defamed her by providing confidential employment termination documentation to the Great Falls Tribune. She asserted that her District Court proceeding was timely filed because she had exhausted her internal grievance and administrative remedies in accordance with § 39-2-911(2), MCA.

¶9 DOC denied all wrongdoing and in March 2012 moved for partial summary judgment as to Baumgart's claims of political affiliation discrimination, violation of privacy, and defamation. Additionally, it sought summary judgment as to all claims levied against Schwinden. Among other things, DOC asserted that Schwinden was not aware that Baumgart was a Republican and therefore DOC could not have discriminated against her on political grounds. Moreover, it argued that Schwinden was immune from liability under § 2-9-305, MCA.

¶10 In October 2012, DOC filed a second motion for partial summary judgment alleging that (1) Baumgart's wrongful discharge claims were barred by res judicata; (2) the Wrongful Discharge from Employment Act (WDEA) did not apply to Baumgart's discharge because Montana Administrative Procedures Act (MAPA) provided a procedure and remedy for this dispute; (3) DOC had "good cause" to discharge Baumgart based upon her mismanagement of the Division's budget; and (4) DOC did not violate state policy by not providing Baumgart with progressive discipline.

¶11 On April 22, 2013, the District Court issued its Memorandum and Order in which it granted DOC's first motion as it pertained to political affiliation discrimination and all claims against Schwinden. It denied the motion as it pertained to Baumgart's privacy and defamation claims as premature. Subsequently, on July 12, 2013, the court issued its Memorandum and Order on DOC's second motion for partial summary judgment in which it granted DOC's motion on the issues of whether the Department had good cause to discharge Baumgart and whether DOC violated state policy by failing to provide progressive discipline. It denied the Department's motion on the issues of whether Baumgart's wrongful discharge claims were barred by res judicata and whether Baumgart was precluded from pursuing her WDEA claim based upon the exclusion contained in § 39-2-912, MCA. As a result of the District Court's orders and our rulings here, the only issues remaining for trial are Baumgart's violation of privacy and defamation claims.

¶12 Both parties moved for certification of some or all of the summary judgment rulings under M. R. Civ. P. 54 (Rule 54) and the District

Court certified both summary judgment orders as final in their entirety for purposes of appeal. The parties stipulated to stay further proceedings pending appeal. Subsequently, the parties filed separate notices of appeal addressing separate issues, DA 13-0564 being Baumgart's appeal, and DA 13-0582 being DOC's appeal. Baumgart appeals the dismissal of her wrongful discharge and political discrimination claims, as well as the dismissal of her claims against Schwinden. She also appeals the District Court ruling that DOC was not required to provide progressive discipline before terminating her employment. DOC appeals the denial of its motion for summary judgment on the defamation and privacy claims. On September 3, 2013, DOC moved this Court to consolidate the two appeals. We denied DOC's motion, concluding that DA 13-0582 was not properly certified as final under Rule 54(b). However, we ordered that the appeal in DA 13-0564 could proceed.

## STANDARD OF REVIEW

¶13 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 20, 370 Mont. 133, 301 P.3d 348 (citations omitted).

¶14 In response to a motion for summary judgment, the non-moving party must provide material and substantial evidence setting forth specific facts to raise a genuine issue of material fact, rather than relying upon speculative, conclusory or fanciful statements. *Hiebert v. Cascade Cty.*, 2002 MT 233, ¶ 21, 311 Mont. 471, 56 P.3d 848. All reasonable inferences that may be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment; however, "[s]ummary judgment cannot be defeated by unsupported speculation." *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 26, 340 Mont. 62, 172 P.3d 116.

## DISCUSSION

¶15 *Did the District Court err in granting DOC's motions for partial summary judgment as they pertained to: (1) political affiliation discrimination; (2) individual claims against DOC director Dore Schwinden; (3) whether the Department had good cause to terminate*

*her employment; and (4) whether the Department violated express provisions of its written personnel policies pertaining to progressive discipline?*

*Political Affiliation Discrimination*

¶16 Baumgart bases her claim of political affiliation discrimination on § 49-2-308, MCA, of the HRA, and § 49-3-201, MCA, of the GCFP. Section 49-2-308(1)(c), MCA, provides:

> It is an unlawful discriminatory practice for the state or any of its political subdivisions to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of that person's political beliefs....

Section 49-3-201(1), MCA, provides:

> State and local government officials and supervisory personnel shall recruit, appoint, assign, train, evaluate, and promote personnel on the basis of merit and qualifications without regard to race, color, religion, creed, political ideas, sex, age, marital status, physical or mental disability, or national origin.

¶17 Baumgart argues on appeal that she established a viable claim for political affiliation discrimination through "compelling circumstantial evidence" that the District Court erroneously disregarded. Acknowledging that the court relied upon the four-prong conjunctive prima facie test for political discrimination set forth in *Ray v. Mont. Tech of the Univ. of Mont.*, 2007 MT 21, 335 Mont. 367, 152 P.3d 122, she maintains that *Ray* is factually distinguishable and therefore inapplicable. Baumgart urges us to reverse the District Court for its failure to consider the multiple extrajurisdictional federal cases upon which she relied, and in light of the "strong circumstantial evidence" she claims to have presented to support her claim.

¶18 DOC maintains that *Ray* is controlling and Baumgart cannot satisfy the first or fourth prongs of the *Ray* prima facie test, and that no further inquiry or analysis is therefore required. It posits that the extrajurisdictional cases presented by Baumgart are inapposite and do not support her argument.

¶19 The *Ray* prima facie test, as it applies to Baumgart's claims, requires proof that:

> 1) Schwinden knew her political beliefs and affiliation;
> 2) Baumgart was otherwise qualified for her position with DOC;
> 3) she was terminated and replaced; and
> 4) she was replaced by someone who did not hold the same political beliefs.

*Ray*, ¶ 32.

¶20 *Ray* is one of the thousands of cases that arose in the wake of the U.S. Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). In *McDonnell Douglas*, the U.S. Supreme Court considered the case of Percy Green, a mechanic and laboratory technician, terminated from his employment at McDonnell Douglas after 8 years. *McDonnell Douglas*, 411 U.S. at 794, 93 S. Ct. at 1820. Green claimed he was discharged because he was black and was a civil rights activist. *McDonnell Douglas*, 411 U.S. at 796, 93 S. Ct. at 1821. Noting disharmony in lower court rulings, the Supreme Court announced the prima facie test that a complainant must satisfy in a Title VII racial discrimination case. Complainant must show: (1) that he belongs to a racial minority; (2) that he applied and was qualified for the job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1825. The Supreme Court further explained that after the complainant has proved his prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the complainant's rejection. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. Complainant must then be afforded "a fair opportunity to show that [employer's] stated reason for [complainant's] rejection was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825.

¶21 The Montana Supreme Court adopted and applied the *McDonnell Douglas* four-prong conjunctive test in 1981 in *Martinez v. Yellowstone Cty. Welfare Dep't.*, 192 Mont. 42, 626 P.2d 242, another case of claimed racial discrimination in employment. Application of the test was then expanded to encompass political discrimination claims in *Ray*. Ray claimed that Montana Tech refused to renew his contract as a department head because of his well-known political beliefs. *Ray*, ¶ 30. This Court stated that Ray had the burden of showing: (1) that he espoused political beliefs which were known to the university; (2) that he was qualified for his position as department head; (3) that, despite his qualification, he was replaced; and (4) he was replaced by someone who did not share his political beliefs. *Ray*, ¶ 32.

¶22 Because Ray stated a prima facie case, the University set forth its reasons for refusing to renew Ray's position including Ray's unprofessional attitude and behavior, his unwillingness to cooperate with his supervisors on multiple occasions, and his threat to organize

a student boycott against a University-proposed relocation of Ray's department. The Human Rights' Commission and the district court, noting that Ray's claim of discrimination was based upon circumstantial rather than direct evidence, analyzed the claim under the *McDonnell Douglas* test. The Commission and the district court found the University's reasons were legitimate and nondiscriminatory and upheld its refusal to renew Ray's department head status. We affirmed.

¶23 As did the District Court in the case before us, we acknowledge the factual distinctions between *Ray* and Baumgart's claims. However, we too conclude the differences do not preclude application of the *Ray* test. Notwithstanding Baumgart's self-proclaimed "compelling circumstantial evidence,"—including a perceived social slight by Schweitzer, the short period of time between Schwinden's arrival as director and her dismissal, and Preite's impression that Schweitzer's office displayed a "feeling of ill-will" toward Baumgart—it is undisputed that she presented no direct, non-speculative evidence that Schwinden or anyone else with decision-making power at DOC knew she was a Republican. In fact, her friend and former superior Preite testified that after working closely with Baumgart for years, he did not know her political affiliation. Schwinden, who worked with Baumgart a mere three weeks before he terminated her employment, also unequivocally testified that he did not know to which political party Baumgart belonged. In the face of this direct evidence and without submission of countervailing facts, Baumgart has not established that she satisfies the first prong of *Ray's* prima facie test. Moreover, we note that Baumgart did not offer any evidence that her replacement was a member of the Democratic party.

¶24 ▮▮ Baumgart has failed to provide material and substantial evidence or specific facts to establish that her discharge was politically motivated. Rather, she relies on speculative and conclusory statements. As noted above, such statements are insufficient to defeat a motion for summary judgment. *Hiebert*, ¶ 21. Because Baumgart failed to establish a prima facie case for political discrimination, we conclude the District Court did not err in granting DOC's motion for summary judgment on this issue.

*Individual Claims Against Schwinden*

¶25 Baumgart argues that the District Court erred in granting immunity to Schwinden in his individual capacity, for breaching the affirmative duties and responsibilities imposed under the above-referenced sections of the HRA and GCFP. She claims that the duties

under § 49-3-201(1), MCA, "are the personal responsibility of 'government officials and supervisory personnel' and ... are specifically distinguished in the statute" from the duties of the agency. Baumgart acknowledges that the Department would be solely responsible for any monetary awards based upon its admission that Schwinden was acting within the scope of his employment, but maintains she should be able to pursue unspecified "equitable, affirmative and injunctive relief" against Schwinden personally.

¶26 DOC counters that § 2-9-305(5), MCA, clearly grants immunity to Schwinden under the circumstances of this case. Section 2-9-305(5), MCA, provides in relevant part:

> In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges ... that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment ... .

¶27 We agree with DOC. In *Kenyon v. Stillwater Cty.*, 254 Mont. 142, 835 P.2d 742 (1992), *overturned in part on other grounds Heiat v. Eastern Mont. College*, 275 Mont. 322, 912 P.2d 787 (1996), former Stillwater County employee Roberta Kenyon filed an age discrimination suit against Stillwater County and county attorney C. Ed Laws. Kenyon claimed that Laws discriminated against her by discharging her and replacing her with a younger woman. *Kenyon*, 254 Mont. at 145, 835 P.2d at 744. The district court granted summary judgment to Laws individually holding that Laws was not individually liable, that Kenyon failed to establish a prima facie case for discrimination, and that she was terminated for good cause. We affirmed on other grounds, holding that under § 2-9-305(5), MCA, Laws was immune from liability because he was an agent of Stillwater County acting within the scope of his authority. *Kenyon*, 254 Mont. at 146, 835 P.2d at 745. *See also Germann v. Stephens*, 2006 MT 130, 332 Mont. 303, 137 P.3d 545.

¶28 The same statute and authorities apply here. We therefore affirm the District Court's grant of summary judgment in favor of the Department and its dismissal of individual claims against Schwinden.

*Good Cause to Terminate Employment*

¶29 Relying on *Howard v. Conlin Furniture No. 2*, 272 Mont. 433, 901 P.2d 116 (1995), Baumgart asserts that her "exemplary performance evaluations" sufficiently raised an issue of fact as to whether she was discharged for good cause. In *Howard*, Howard was hired by Conlin's

owner Paul Gunville to manage the Billings' Conlin Furniture store in September 1990. Eighteen months later, Gunville gave Howard an "outstanding" job performance evaluation. Shortly thereafter, Gunville hired Robert Anderson as district supervisor for four stores, including the store Howard managed. Anderson assumed the position in January 1993. *Howard*, 272 Mont. at 435, 901 P.2d at 118. In May 1993, Anderson "discharged" Howard from his position as store manager but offered him a sales position at less than 25% of his managerial salary. Anderson immediately replaced Howard with Doug Sahr, a friend of Anderson's. *Howard*, 272 Mont. at 436, 901 P.2d at 118.

¶30 Howard filed a complaint alleging that Conlin Furniture had wrongfully discharged him. *Howard*, 272 Mont. at 435, 901 P.2d at 117. The district court disagreed and granted Conlin's motion for summary judgment. *Howard*, 272 Mont. at 436, 901 P.2d at 118. On appeal, we reversed.

¶31 Though we observed that Howard had received an outstanding performance evaluation a year earlier, this was not the sole reason that we reversed the district court. *Howard*, 272 Mont. at 440, 901 P.2d at 120-21. We also addressed specific allegations of poor performance Anderson had documented and Howard's responses to those allegations. We concluded that the claims, denials, counterclaims, and multiple contradictions raised a factual issue as to whether Howard was terminated for "good cause" within the meaning provided at § 39-2-903(5), MCA. *Howard*, 272 Mont. at 440, 901 P.2d at 120.

¶32 In the case at bar, DOC presented direct evidence that Baumgart failed to appropriately manage her budget. As noted above, Baumgart was informed when she became administrator that accumulation of unused funds in the Tourism Division budget could be subject to appropriation by the Legislature to help meet any shortfalls in the state's general fund. In fact, she was administrator in 2003 when such an appropriation actually occurred. Throughout her tenure as administrator, Baumgart received monthly, quarterly, and annual reports providing significant budgetary statistics, including the amount her Division collected, the amount it spent, the amount accrued, and the cash and fund balances. These reports indicated that the year-end fund balance in 2006 was just under $5 million, approximately $8 million in 2007, nearly $9 million in 2008, and $5.5 million in 2010.

¶33 In June 2010, the Legislative Fiscal Division issued a reference book that identified fund balances in various agency fund accounts that were available to be swept from the agency and deposited into the

general fund. One such fund was that of DOC's Tourism Division. The reference book noted that the fund had carried a "fund balance in excess of $4 million ... for the past five fiscal years." As a consequence, the Tourism Fund was categorized as a potential fund for appropriation. When questioned about the fund excess by Schwinden, Baumgart admitted that she did not know about the excess funds or even how they accumulated.

¶34 Schwinden subsequently sought counsel from other upper management DOC employees regarding his concern about Baumgart's performance and requested an investigation. Following receipt of the requested information, Schwinden met with Baumgart, informed her of his intention to discharge her, and allowed her to respond to his concerns. At the end of the meeting, Schwinden concluded her serious lack of management competencies for the programs and funds at the Tourism Division constituted good cause for discharge.

¶35 Section 39-2-903(5), MCA, of the WDEA, defines "good cause" as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason... ." "A discharge is wrongful if no good cause exists for the termination." *Sullivan v. Cont'l. Constr. of Mont., LLC*, 2013 MT 106, ¶ 17, 370 Mont. 8, 299 P.3d 832; § 39-2-904, MCA. We have stated that a "legitimate business reason" involves "a reason that is neither false, whimsical, arbitrary or capricious and ... must have some logical relationship to the needs of the business." *Sullivan*, ¶ 17. Sullivan, a top manager in a construction company, was terminated after his employer received numerous complaints from employees and subordinates about Sullivan's treatment of some employees and subcontractors. Although other employees defended Sullivan, he was discharged. In affirming the district court's grant of the employer's motion for summary judgment, we noted that an employer has the right to exercise broad discretion over whom it will employ and keep in employment and to terminate a person in an executive position. *Sullivan*, ¶¶ 18, 25.

¶36 ▇ Sullivan failed to present material and substantial evidence to raise a genuine issue of material fact as to whether his employer possessed a legitimate business reason to terminate his employment. The same holds true for Baumgart. She cannot refute the existence of the budget problem or her admissions that she did not understand her Division's budget. For five consecutive years, she placed the Division in the precarious position of having more than $4 million in extremely valuable funds swept out of her budget and into the general fund.

According to a 2004 study, every dollar spent on advertising Montana generated $3.50 in revenue through state and local taxes paid by tourists. Additionally, for every advertising dollar spent, $60 in revenue was generated for the tourism industry in motel and food sales. Consequently, the loss of $4 million in advertising monies would result in an enormous loss of revenue for the state. Because there is no dispute that Baumgart did not perceive this problem or act to rectify it, we conclude the District Court had sufficient credible evidence before it to determine that Baumgart lacked the necessary budget and finance competencies to serve as administrator of the Tourism Division. Thus, DOC had good cause to terminate Baumgart. The District Court did not err in granting the Department's motion for summary judgment.

¶37 The Dissent correctly notes, "An employee may establish an issue of fact for trial if she can prove 'that the given reason for the discharge ... is a pretext and not the honest reason for the discharge.' " Dissent, ¶ 43. The Dissent neglects, however, to supply the cautionary sentence that directly follows this quote, which provides: "To create this issue of fact, mere denial or speculation will not suffice" (citation omitted). As we state in ¶ 23, "it is undisputed that [Baumgart] presented no direct, non-speculative evidence that Schwinden or anyone else with decision-making power at DOC knew she was a Republican." We further conclude in ¶ 24 that Baumgart failed to present substantial evidence or specific facts to establish that her discharge was politically motivated. Notably, the Dissent has concurred in these conclusions. The failure of Baumgart's political discrimination claim is not necessarily fatal to her separate wrongful discharge claim. In this case, however, Baumgart failed to present *any* evidence of other underlying reasons for her termination, aside from her unsupported allegations of political motivation for both the political discrimination and wrongful discharge claims. This being so, it is difficult to reconcile the Dissent's assertion that "the record provides substantial additional evidence that the fund balance explanation was a pretext for her termination and that illegitimate reasons more likely motivated the action." Dissent, ¶ 46.

¶38 The Dissent cites *Vettel-Becker* for the proposition that a trial is required if the reason given by the employer for the discharge was "false, whimsical, arbitrary or capricious, or unrelated to the needs of the business." There is no dispute that the employer's assessment of Baumgart's misunderstanding of the Division's budget was not false, and it is certainly related to "the needs of the business." Under this

circumstance, and given Baumgart's managerial position, the fact that the employer may have articulated additional reasons for the discharge, or that Baumgart may surmise alternative reasons for the discharge, is not material.

¶39 The evidence that supports a non-pretextual reason for Baumgart's discharge is not disputed. We have held that the discretion afforded a department Director is at its broadest when dealing with managerial employees. In *Sullivan,* we expressly stated, "[w]e afford employers the *greatest discretion* where an employee occupies a 'sensitive' managerial position and exercises 'broad discretion' in his job duties." *Sullivan,* ¶ 18 (emphasis added). Baumgart occupied one of the highest managerial positions in her Division, answering only to the Director. She was responsible for the Division's budgetary and financial well-being; thus, her failure to comprehend a critical and vulnerable component of her budget understandably undermined the Director's confidence in her management ability. Schwinden had the right to exercise his considerable discretion in determining whether Baumgart possessed the required proficiencies to perform her job.

*Violation of Department Progressive Discipline Policies*

¶40 Finally, Baumgart submits an alternative claim under the WDEA, which is that DOC violated its own written personnel policies by failing to administer progressive discipline. Section 39-2-904(1)(c), MCA, provides a discharge is wrongful if "the employer violated the express provisions of its own written personnel policy." We reject this argument. The Department's formal discipline and termination policy set forth at Admin. R. M. 2.21.6509(2) provides in relevant part that "[m]anagement may determine the appropriateness of using progressive discipline on a case-by-case basis." In other words, under its written personnel policies, DOC is not *required* to utilize progressive discipline. She therefore can state no claim under § 39-2-904(1)(c), MCA.

## CONCLUSION

¶41 For the foregoing reasons, we affirm the District Court's April 22 and July 12, 2013 orders granting DOC's motions for partial summary judgment.

JUSTICES WHEAT, BAKER and SHEA concur.

JUSTICE RICE, concurring in part and dissenting in part.

¶42 While I concur with the Court's reasoning on Issues 1, 2, and 4, I respectfully dissent from its holding on Issue 3. The Court concludes that because Baumgart did not perceive "the budget problem" or act to

rectify it, good cause existed to terminate her employment. Opinion, ¶ 36. In my view, this analysis overlooks issues of fact regarding good cause and ignores a critical aspect of Baumgart's argument and of our WDEA jurisprudence—pretext.

¶43 In order to survive summary judgment in a wrongful discharge action where an employer alleges legitimate business reasons for the discharge, an employee " 'must offer evidence upon which a fact-finder could determine that the reason given by the employer was false, whimsical, arbitrary or capricious, or unrelated to the needs of the business.' " *Vettel-Becker v. Deaconess Med. Ctr. of Billings, Inc.*, 2008 MT 51, ¶ 28, 341 Mont. 435, 177 P.3d 1034 (citation omitted). An employee may establish an issue of fact for trial if she can prove " 'that the given reason for the discharge ... is a pretext and not the honest reason for the discharge.' " *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 28, 336 Mont. 105, 152 P.3d 727 (quoting *Arnold v. Yellowstone Mountain Club, LLC*, 2004 MT 284, ¶ 26, 323 Mont. 295, 100 P.3d 137 (citing *Mysse v. Martens*, 279 Mont. 253, 262, 926 P.2d 765, 770 (1996))). In making this determination, "[a]ll reasonable inferences which can be drawn from the evidence presented must be drawn in favor of the non-moving party." *Vettel-Becker*, ¶ 27 (citing *Cape v. Crossroads Correctional Ctr.*, 2004 MT 265, ¶ 12, 323 Mont. 140, 99 P.3d 171).

¶44 Here, the record reveals that at the time Baumgart was fired, she had served as Tourism Director for the DOC for over eight years without receiving a single performance-based warning, write-up, or reprimand. Baumgart testified that she had never heard anyone comment negatively on her work. Former DOC director Tony Preite testified that Baumgart routinely received exemplary performance reviews. Her supervisors even requested and obtained an upward pay adjustment on her behalf in 2008. Baumgart also earned national recognition and commendation on multiple occasions for her efforts to promote tourism within the state. According to Smith Travel Research, a company that tracks hotel lodging, accommodation, and rates, Montana had the highest occupancy rate in the nation at one point during Baumgart's tenure.

¶45 Yet despite her exemplary performance record, Baumgart was fired by a new department director within several weeks of his appointment. The official reasons given by the Department for her termination were as follows: (1) inadequate management of short-term investment pool resources and the division budget; (2) delaying the RFP process in Custer County and failing to notify the Northern

Cheyenne and Crow tribal governments; (3) insensitivity to protocol with tribal governments; (4) failure to inform or consult the Governor's Office regarding the appropriateness of the "Get Lost" in Montana campaign; and (5) improper and excessive use of computer for personal or recreational activities. Subsequently, however, the hearing examiner determined that reasons (2) through (5) were wholly unsubstantiated. In her Findings Of Fact and Recommendation, the hearing examiner explained as follows:

> Ms. Baumgart should not be discharged either singly or in combination for the remaining four reasons given because there was not just cause. There were not reasonable job-related grounds and Ms. Baumgart did not fail to satisfactorily perform her duties nor did she disrupt agency operations as to those four grounds.

Not surprisingly, the Department then backed away from the "remaining four reasons" and refocused its good-cause argument solely on Baumgart's allegedly improper handling of the Division's budget. In response, Baumgart presented evidence that other agencies within the state likewise maintain positive budget surpluses, but that no other division head has ever been terminated for doing so. She also revealed that there were conflicting reports regarding the actual surplus dollar amount—a 2010 internal cash analysis worksheet revealed $2.9 million in unencumbered funds, as opposed to the $4 million figure cited in the legislative reference book. Moreover, Baumgart increased spending significantly in 2009 and 2010. Her efforts at addressing the fund surplus resulted in program spending that actually exceeded revenue for fiscal year 2010, after which she was terminated.

¶46 I believe that this evidence raises an issue of fact as to whether Baumgart was actually fired for maintaining a budget surplus, and whether this reason would constitute good cause in any event. Baumgart's exceptional employment record, coupled with the fact that four of the five reasons proffered for her termination were found to be without merit and withdrawn, the fact that other agencies maintain budget surpluses with no adverse employment consequences for their program directors, and the fact that Baumgart was having success in efforts to increase spending prior to her termination, constitute sufficient circumstantial evidence of pretext and evidence demonstrating lack of good cause to survive summary judgment. As she argues, "[t]he record provides substantial additional evidence that the fund balance explanation was a pretext for [her] termination and that illegitimate reasons more likely motivated that action." Again, at the summary judgment stage we must draw all reasonable inferences

in favor of Baumgart. *Vettel-Becker*, ¶ 27 (citation omitted). A trier of fact should determine whether Baumgart's budget-management competency constituted an honest reason and good cause for her termination.

¶47 The Court faults this dissent for concurring with the determination that Baumgart failed to set out a prima-facie claim of political discrimination (Issue 1), while at the same time concluding that she has presented sufficient evidence to survive summary judgment on her WDEA claim (Issue 3). Opinion, ¶ 37. However, the Court's position assumes that the validity of Baumgart's pretext claim rests upon her ability to provide sufficient evidence of political discrimination, thereby conflating the two claims. Certainly, *Ray* requires Baumgart to prove that her employer "knew her political beliefs and affiliation" and that "she was replaced by someone who did not hold the same political beliefs," Opinion, ¶ 19 (citing *Ray*, ¶ 32). In contrast, our WDEA jurisprudence requires proof " 'upon which a fact-finder could determine that the reason given by the employer was false, whimsical, arbitrary or capricious, or unrelated to the needs of the business,' " *Vettel-Becker*, ¶ 28 (citation omitted). Accordingly, a triable issue of fact arises when the evidence establishes that the proffered reason for the discharge " 'is a pretext and not the honest reason for the discharge.' " *Johnson*, ¶ 28 (citations omitted). Thus, Baumgart's burden on her WDEA claim was to present evidence that the DOC's proffered reason for firing her was not the truth. That is not the same burden, and is not the same claim, as proving she was fired because of political discrimination. The Court also fails to adequately rebut Baumgart's argument that the budget surplus, without more, and in light of her success, did not constitute good cause to terminate her employment. As outlined above, Baumgart has presented substantial evidence, wholly separate from that necessary to support a political discrimination claim, to avoid summary judgment under the WDEA.

¶48 Of course, the only reason this case exists at all is because of the existence of the artificial world known as government agency budgeting. Only in that world could an employee who is performing with excellence, achieving great results, and winning national awards be discharged because she had not spent enough of the government's money to do so. In that world, it is a mortal sin to fail to spend money and allow it to return to the public coffers. Unfortunately, that artificial world is very real to the lives of real people. The irony and tragedy of this case is that, had Baumgart not been so efficient, but

instead spent more dollars here and there, she could have satisfied agency budgeting expectations and saved her job. The Court becomes complicit in the matter and in this system by ruling, even without regard to the plausibility of political discrimination or pretext, that as a matter of law there is good cause for termination of such an employee. I think a jury should have a chance to look at this case.

¶49 I would reverse on Issue 3 and remand this case for further proceedings on that claim.

JUSTICE McKINNON joins in the concurring and dissenting Opinion of JUSTICE RICE.