FILED

05/30/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0562

DA 22-0562

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 99

KILA SHEPHERD.

Plaintiff and Appellant,

v.

STATE OF MONTANA,
DEPARTMENT OF CORRECTIONS,

Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 2020-302
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John Doubek, Doubek, Pyfer & Storrar, PC, Helena, Montana

For Appellee:

Patricia Klanke, Drake Law Firm, P.C., Helena, Montana

Submitted on Briefs:  April 26, 2023

Decided:  May 30, 2023

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Kila Shepherd (Shepherd) appeals the Summary Judgment Order denying her wrongful discharge from employment claim issued by the First Judicial District Court, Lewis and Clark County.

¶2     We affirm and restate the issue as follows:

*Were there undisputed facts establishing good cause for Shepherd's termination?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     The Montana Department of Corrections (DOC) employed Shepherd as the Director of Human Resources (HR Director) from January 2014 to August 10, 2018. While employed, Shepherd led the DOC's Office of Human Resources (HR Office) for DOC's 1,300 employees. The HR Office was responsible for employee recruitment and selection, performance appraisal processing, labor relations, employee discipline, and professional development. Shepherd served on the DOC's leadership team and reported to the Deputy Director. Shepherd's job description required her to "demonstrate discretion, integrity, and fair-mindedness." As the HR Director, Shepherd agreed to keep information confidential and be trustworthy while maintaining personnel issues and participating in DOC leadership.

¶4     On February 28, 2018, the DOC Director at the time, Reginald Michael (Michael), Deputy Director Cynthia Wolken (Wolken), and Shepherd met with DOC employee, Cindy McKenzie (McKenzie), regarding McKenzie's handling of a sensitive matter that could have resulted in disciplinary action against McKenzie. Shepherd recorded the meeting

2

with McKenzie and a post-meeting discussion between Michael, Wolken and Shepherd that occurred after McKenzie left the meeting. The post-meeting included a discussion about McKenzie's conduct and other personnel issues. Michael, Wolken, and McKenzie have all stated they were unaware that Shepherd was recording the meeting or the post-meeting discussion. Shepherd claims Michael and Wolken were aware she was recording pursuant to DOC "standard operating procedure."

¶5 After recording the meeting and post-meeting discussion, Shepherd transcribed only the meeting that McKenzie attended. She saved this transcript on a "personal" drive on her state computer—only accessible to Shepherd and the State's Information Technology department. Shepherd did not provide the transcript to Michael or Wolken, even though Michael requested it.

¶6 On March 1, 2018, Shepherd responded to an email from Wolken regarding potential discipline of McKenzie. The following day, Shepherd shared this email with McKenzie without Michael's or Wolken's knowledge. Shepherd informed McKenzie that Shepherd did not believe discipline was warranted, although she was unaware of any decision by Michael or Wolken about McKenzie's potential discipline. Ultimately, McKenzie was never disciplined.

¶7 During the spring of 2018, the Governor's Office engaged Patricia MacEwen[1] (MacEwen) from the Department of Environmental Quality (DEQ) to conduct an

---

[1] At the time of the investigation, MacEwen was DEQ's Central Services Division Administrator who oversaw its HR Department. She has significant knowledge and experience in the HR field.

"organizational assessment" of the DOC. The assessment was requested because of concerns about communication and decision-making issues at the DOC. MacEwen and her team interviewed roughly 20 members of the DOC leadership team. As part of this assessment, MacEwen interviewed McKenzie who brought up her previous disciplinary issue. McKenzie told MacEwen that Shepherd had recorded the February 28 meeting with Michael and Wolken without McKenzie's knowledge and that Shepherd had forwarded the March 1 email to McKenzie. MacEwen then interviewed Shepherd who volunteered that she had recorded the February 28 meeting to protect herself and McKenzie from Michael and Wolken.[2]

¶8      MacEwen reported she was troubled by McKenzie's and Shepherd's reports about the recordings and by Shepherd sharing her disciplinary recommendation with McKenzie. MacEwen did not believe it was appropriate for the HR Director to take such actions and, accordingly, determined Shepherd had broken trust with her employer which required an investigation. The Governor's Office assigned the Department of Administration[3] (DOA) to conduct the investigation. Shepherd was placed on paid administrative leave on May 15, 2018, pending the outcome of the investigation.

---

[2] During Shepherd's Step III grievance hearing, she contradicted this statement to MacEwen and testified that she recorded the meeting as part of her official duties.

[3] The matter was referred to DOA because Shepherd supervised the HR department which would normally be tasked with investigating. It would be inappropriate for Shepherd's subordinates to investigate their supervisor. It was also determined that Michael and Wolken should not be involved in deciding the outcome of Shepherd's employment given they had personal involvement in the allegations against her.

¶9     The DOA hired attorney Amy Christensen (Christensen) to investigate the allegations against Shepherd. Christensen interviewed MacEwen, McKenzie, Shepherd, Michael, and Wolken. Michael, Wolken, and McKenzie informed Christensen they were not aware the meetings were being recorded and did not see a recording device during the meetings. McKenzie told Christensen about the March 1 email, but Shepherd denied sending McKenzie that email. When Christensen asked Shepherd why she recorded the post-meeting discussion, Shepherd told Christensen that she had forgotten to turn the audio recorder off. Shepherd conceded she never provided Michael with a transcript of the meeting although he had requested it twice. Shepherd told Christensen that she did not know why she failed to provide Michael with a transcript, but later explained she did not believe Michael needed the transcript. Shepherd told Christensen she had saved the February 28 meeting transcripts to her work computer in a "projects" folder or a "director's office" folder. However, the DOC's chief technology officer found the transcripts in a folder labeled "personal."

¶10    Based on the investigation, Christensen found "it [was] more likely than not that Ms. Shepherd intentionally recorded the meeting without the knowledge of the other participants." Christensen concluded, "Shepherd acted contrary to the interest of her employer . . . in sharing her personnel advice with the employee whose conduct was at issue" and that since "Shepherd occupies a highly sensitive position in the agency, her conduct has likely impaired her ability to be effective in that role."

¶11     On July 13, 2018, DOA sent Shepherd a pre-determination and due process letter listing two reasons why the State was considering her discharge: (1) recording the February 28 meeting without the knowledge and consent of the attendees, and (2) knowingly providing erroneous information to investigators during the investigation. On July 30, 2018, DOA met with Shepherd to afford her the opportunity to respond to the allegations against her.  Shepherd provided a written response and rebutted the State's second reason for considering her discharge: "I repeatedly explained that I didn't remember everything and that I had no access to my notes or documents discussed prior to or during the interview."  Based on Christensen's report, the due process meeting, and the documents provided by Shepherd at the meeting, DOA determined Shepherd had violated the core components of trust and integrity as the HR Director, and she could no longer be successful in her position.

¶12     Shepherd received a termination letter informing her of her official discharge from employment on August 10, 2018.  The letter explained the same reasons for her discharge as stated in the pre-determination and due process letter, along with a notice that she could appeal the decision under the administrative grievance policy.  The same day, Shepherd sent written notice that she intended to pursue a Step III grievance under the policy.  A Hearing Officer was assigned to her grievance, and on January 7, 2019, the Hearing Officer held a grievance hearing.

¶13     Meanwhile, on August 13, 2018, Shepherd filed a charge of discrimination with the Montana Human Rights Bureau (MHRB), alleging Michael had engaged in sexual

harassment and that her discharge was retaliatory. On January 29, 2019, the MHRB dismissed Shepherd's retaliation claim, finding "no reasonable cause" and that the allegations were not supported by a preponderance of the evidence. The MHRB's dismissal included explicit, boldfaced language informing Shepherd she had "WITHIN 90 DAYS" to file a claim for sexual harassment retaliation. The U.S. Equal Employment Opportunity Commission (EEOC) notified Shepherd it had adopted the MHRB's finding of "no reasonable cause" on February 14, 2019. Shepherd did not appeal either the MHRB or EEOC decision. On February 14, 2020, the State issued a Final Administrative Decision adopting the Hearing Officer's recommendation that her grievance claims be denied.

¶14 On March 11, 2020, Shepherd filed her Complaint for Wrongful Termination, Petition for Judicial Review and Demand for Jury Trial. The DOC moved for summary judgment claiming that Shepherd failed to timely file her Complaint under the Wrongful Discharge from Employment Act (WDEA). The District Court granted the DOC's motion on July 10, 2020. Shepherd appealed to this Court, and we concluded that the District Court erroneously determined her complaint was untimely and thus erred in granting summary judgment to the DOC. We remanded for further proceedings. *Shepherd v. State ex rel. Dep't of Corr.*, 2021 MT 70, 403 Mont. 425, 483 P.3d 518.

¶15 On remand, Shepherd moved for substitution of the District Court judge and a new judge assumed jurisdiction. After the close of discovery, the DOC moved for summary judgment asserting Shepherd's WDEA claim failed as a matter of law. The District Court granted the DOC's Motion, finding that undisputed facts established Shepherd's discharge

7

was for "good cause" and that Shepherd did not establish that the reasons for her discharge were false, pretextual, or retaliatory.  Shepherd appeals.

## STANDARD OF REVIEW

¶16    We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court.  *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 (citation omitted).  A motion for summary judgment must be granted when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  M. R. Civ. P. 56(c)(3). After the moving party has met its burden, the burden shifts to the non-moving party to demonstrate that a material issue of fact exists.  *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 24, 340 Mont. 62, 172 P.3d 116.  Mere denial or speculation does not suffice to defeat summary judgment.  *Knucklehad*, ¶ 24.  Disputes over some factual assertions "do not render summary judgment inappropriate where there are facts *not* in dispute that provide 'good cause' for discharge from employment."  *Davis v. State*, 2015 MT 264, ¶ 14, 381 Mont. 59, 357 P.3d 320 (citing *Becker v. Rosebud Operating Servs.*, 2008 MT 285, 345 Mont. 368, 191 P.3d 435) (emphasis in original).  We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous.  *Pilgeram*, ¶ 9 (citation omitted).

## DISCUSSION

¶17    The WDEA, in relevant part, provides "[a] discharge is wrongful only if . . . the discharge was not for good cause."  Section 39-2-904(1)(b), MCA.  "Good cause" means

8

"reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA. A "legitimate business reason" is a reason "that is not false, whimsical, arbitrary, or capricious, and one that must have some logical relationship to the needs of the business." *Davis*, ¶ 10; *Bird v. Cascade Cnty.*, 2016 MT 345, ¶ 11, 386 Mont. 69, 386 P.3d 602.

¶18 The employer possesses the initial burden to present evidence of "good cause" in a WDEA claim. *Buckley v. W. Mont. Cmty. Mental Health Ctr.*, 2021 MT 82, ¶ 16, 403 Mont. 524, 485 P.3d 1211. Courts "must be cautious in second guessing employment decisions" in cases involving managerial employees. *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 33, 330 Mont. 48, 125 P.3d 1121. An employer has broad discretion "to terminate a person in an executive position." *Baumgart v. State*, 2014 MT 194, ¶ 35, 376 Mont. 1, 332 P.3d 225. An employer can terminate a managerial employee who is determined to be untrustworthy to run day-to-day operations. *Sullivan v. Cont'l Constr. of Mont.*, 2013 MT 106, ¶ 25, 370 Mont. 8, 299 P.3d 832. Therefore, an employer's loss of confidence and trust in a managerial employee's ability is a legitimate business reason sufficient to legally justify discharge under the WDEA. *Buckley*, ¶ 17 (citing *Sullivan*, ¶ 25).

¶19 After the employer's initial showing, the burden shifts to the employee "to show specific facts upon which to reasonably conclude that the given reason for discharge was: (1) not a job or business-related reason; (2) false; (3) not the true reason for discharge; or

(4) arbitrary, capricious, or whimsical." *Buckley*, ¶ 16. However, "[m]ere denial, speculation, or cursory assertion to the contrary is insufficient to satisfy the employee's responsive burden." *Buckley*, ¶ 16.

¶20 Here, the DOC has met its initial burden of showing good cause for Shepherd's discharge from her sensitive managerial position as the HR Director. The undisputed facts show Shepherd was discharged for knowingly providing erroneous information during the investigation. While a factual dispute exists over whether Michael directed Shepherd to record the meeting, there is no genuine issue of material fact that Shepherd provided Christensen with inconsistent answers throughout the investigation, resulting in the impairment of Shepherd's trustworthiness as HR Director. The undisputed facts establish that Shepherd gave inconsistent accounts of events to different investigators. For example, she testified during the Step III grievance hearing that Michael asked her to record the meeting, but previously told MacEwen she recorded the meeting to protect herself and McKenzie because she did not trust Michael or Wolken. In response to Christensen's investigation, she denied sending McKenzie the March 1 email, but admitted during the administrative hearing that she did provide the email to McKenzie. Shepherd provided inconsistent accounts of where she saved the transcripts on her computer.[4] Based on these undisputed facts, the record is clear that Shepherd's inconsistent and contradictory

---

[4] Shepherd responds to the District Court's determinations that she made "inconsistent statements" related to "where she saved the meeting transcripts" by saying she had a faulty memory because she could not access her notes. However, and as the District Court properly concluded, Shepherd's inconsistent statements related directly to "core questions" of the investigation rather than minor details that require reference to notes.

statements to investigators establish good cause for her discharge, especially given Shepherd served in a sensitive managerial position requiring confidence and trust.

¶21 Next, the burden shifts to Shepherd to show that the DOC's reasons for her discharge were false, arbitrary, capricious, or a mere pretext. Shepherd argues the DOC wrongfully terminated her based on retaliation because she reported Michael engaged in discriminatory conduct—in particular, sexual harassment of DOC employees. However, Shepherd has failed to provide evidence that creates a genuine issue of material fact that her termination was retaliatory. Shepherd alleged there was a "cabal between Wolken and Michael whereby they lied" about her recording the meetings. She further claimed that the timing of her sexual harassment allegations was not merely "a coincidence." Shepherd's assertions constitute speculation, and not a genuine dispute of material fact. She has failed to offer anything "beyond mere speculation" that the reason for her discharge was false, arbitrary, capricious, or a mere pretext. *See Putnam v. Cent. Mont. Med. Ctr.*, 2020 MT 65, ¶ 21, 399 Mont. 241, 460 P.3d 419 ("Summary judgment is proper if the employee fails to provide evidence, beyond mere speculation, that the given reasons for the termination are a pretext and not the honest reason."). The assertions offered by Shepherd constitute speculation and are insufficient to overcome the conclusion that her discharge was for good cause.

¶22 Shepherd also contends the District Court erred in granting the DOC summary judgment because it "accepted all factual assertions made by the DOC as true when genuine issues of material fact exist." Specifically, Shepherd claims the District Court improperly

11

failed to consider the following relevant disputed facts: Shepherd's assertion that it was standard practice to record meetings; McKenzie's affidavit stating that she "knew" Shepherd "would not do anything surreptitiously"; and Michael's purported request for transcripts thus suggesting he knew the meeting was recorded. Regardless of these alleged disputes of fact, the District Court, here, based its Order on *other undisputed* facts which standing alone provided good cause for Shepherd's termination; in particular, Shepherd's inability to provide truthful information in the investigation. The District Court reasoned: "While there is, ostensibly, a factual dispute over whether Shepherd was directed to record the meeting, there is no genuine dispute that Shepherd provided inconsistent answers throughout the investigation, leading to the deterioration and impairment of trust in Shepherd as HR Director." We conclude the District Court based its findings on only undisputed facts which demonstrated Shepherd's inconsistent statements during an investigation. Thus, the District Court correctly held Shepherd's contrary statements she made during the investigation constituted good cause for her termination.

¶23 Lastly, Shepherd contends that the District Court erred when it relied on sworn "one-sided" testimony from the Step III grievance hearing, thereby depriving her of her "right to a jury trial." Sworn testimony constitutes sufficient evidence on which to base summary judgment determinations. *Putnam*, ¶ 12. Shepherd does not present any evidence that the testimony during the administrative hearing was insufficient. The witnesses during the hearing testified under oath and were subject to cross-examination by Shepherd's counsel. The District Court did not err when it relied on sworn testimony presented at the

Step III grievance hearing, and Shepherd is not deprived of right to a jury trial. Her grievance claims were properly brought and adjudicated in an administrative proceeding.

**CONCLUSION**

¶24 The District Court did not err in granting the DOC summary judgment because it correctly based its Order on undisputed facts establishing "good cause" for Shepherd's termination. Shepherd gave inconsistent statements during the investigation, which undermined her trustworthiness and integrity to continue in a managerial position. The District Court properly found Shepherd failed to provide sufficient evidence establishing that the reasons for her termination were retaliatory. Finally, the District Court could rely on sworn testimony produced in an administrative hearing to make findings.

¶25 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE

13